UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARLA GARCIA,

    Plaintiff,

v.                                                    Civ. No. 21-372 KG/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

    Defendant.

**PROPOSED FINDINGS AND**
**RECOMMENDED DISPOSITION**

THIS MATTER is before the Court upon Plaintiff Marla Garcia's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 19] ("Motion"). The Motion is fully briefed. ECF 22 (response); ECF 23 (reply). Having meticulously reviewed the entire record and the briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that the Motion be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.[1]

**I.    BACKGROUND**

Plaintiff is 53 years old and lives with her daughter in Santa Fe, New Mexico. Administrative Record ("AR") at 41–42. Before applying for social security disability benefits, Plaintiff earned an associate's degree and worked as a dental assistant and an emergency medical technician. *Id.* at 41. Plaintiff last worked in 2017 as an in-home caregiver. *Id.* at 58. Plaintiff filed applications for supplemental security income and for disability insurance benefits in January 2019. *Id.* at 11. At the administrative level, Plaintiff claimed that she has been disabled since August 1, 2017, due to an ankle injury, a history with methicillin-resistant staphylococcus aureas

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3). ECF 28.

(commonly known as "MRSA"),[2] rheumatoid arthritis, and carpal tunnel syndrome. *Id.* at 63–64.

The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. *Id.* at 71, 81. At Plaintiff's request, Administrative Law Judge ("ALJ") Michelle Lindsay heard Plaintiff's case in September 2020. *Id.* at 71, 133–35. The ALJ issued a written decision in October 2020, finding Plaintiff "not disabled" at step five because she could engage in "work that exists in significant numbers in the national economy." *Id.* at 17. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1. In March 2021, Plaintiff filed the instant action, seeking reversal of the ALJ's decision. ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff makes two arguments, both of which challenge the ALJ's reliance on the "grids" at step five. Explained more below, "the grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's [Residual Functional Capacity ("RFC")] category, age, education, and work experience." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).[3] First, Plaintiff contends that the ALJ misapplied the grids because Plaintiff's exertional capacity fell between two rules— "light" and "sedentary." ECF 19 at 11. Plaintiff insists that—for the purpose of applying the grids—the SSA's Program Operations Manual System ("POMS") required the ALJ to resolve this difference by finding that Plaintiff could only work jobs at the *lower* exertional level. *Id.* Plaintiff asserts that if

---

[2] MRSA is an infection "caused by … staph bacteria that's become resistant to many of the antibiotics used to treat ordinary staph infections." MRSA Infection, Mayo Clinic (Dec. 1, 2020), https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336. MRSA is most commonly contracted by people who have been in hospitals or other healthcare settings. *Id.* A MRSA infection can result in abscesses that require surgical draining. *Id.* In some cases, such abscesses can "burrow deep into the body, causing potentially life-threatening infections in bones, joints, surgical wounds, the bloodstream, heart valves and lungs." *Id.*

[3] RFC is a technical term referring to an assessment of the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

the ALJ had done that here and used the sedentary exertional level, the grids would have directed a finding of disability. *Id.* Second, Plaintiff contends that the ALJ could not conclusively rely on the grids in any event because Plaintiff also raised *nonexertional* impairments. ECF 19 at 7–10.[4]

## III. RELEVANT LAW[5]

### A. Substantial Evidence

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

---

[4] Plaintiff also challenged the ALJ's authority to render a decision on her case, arguing that the Commissioner's appointment was unconstitutional under *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183 (2020) (holding that the removal provision applicable to the head of the Consumer Financial Protection Bureau was unconstitutional). ECF 19 at 12–13. But because Plaintiff explicitly conceded this argument in her reply brief, ECF 23 at 1, the Court expresses no opinion on the *Seila Law* question.

[5] Although Plaintiff filed claims for both supplemental security income and disability insurance benefits, the Court cites only to the regulations relevant to disability insurance benefits and does not otherwise include parallel citations to the provisions related to supplemental security insurance. *See generally* 20 C.F.R. § 404, *et seq.* (providing regulations for disability insurance benefits); 20 C.F.R. § 416, *et seq.* (providing regulations for supplemental security income).

conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the

4

ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### C. ALJ's Use of the "Grids"

The "grids" are a set of rules used to "identify whether a claimant is disabled by comparing [her] personal characteristics to the criteria of specific rules—without consulting a vocational

expert." *Aslan v. Colvin*, 637 F. App'x 509, 510 (10th Cir. 2016) (unpublished). In other words, the grids act as a shortcut for step five analysis, obviating the need for vocational expert testimony. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) (citing *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988)). Before the grids may be applied conclusively, however, the claimant's RFC must "precisely match" the criteria of a particular rule. *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984). And because the grids only consider *exertional* limitations, they may not be conclusively applied where nonexertional impairments are also present. *Id.* Thus, the grids may only be applied conclusively if (1) the claimant's characteristics "precisely match" the criteria of a rule and (2) the claimant does not allege that she has any nonexertional impairments. *Trimiar*, 966 F.2d at 1332–36. If the grids cannot be conclusively applied, "the ALJ must resort to testimony from a vocational expert." *Id.* at 1333.

Notably, however, "the mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990)). Instead, to preclude such reliance, the nonexertional impairment must interfere with the claimant's ability to work. *Id.* (citing *Ray*, 865 F.2d at 225; *Gossett v. Bowen*, 862 F.3d 802, 807 (10th Cir. 1988)).

### D. Subjective Symptom Evaluation

The ALJ assesses the RFC based on "all of the relevant evidence in the case record, including information about the [claimant's] symptoms." SSR 96-8p, 1996 WL 374184, at *2. The SSA defines "symptoms" as a claimant's "*own* description or statement of … her physical or mental impairments." SSR 16-3p, 2017 WL 5180304, at *2 (emphasis added). Under SSA regulations, a claimant's "statements of symptoms alone are not enough to establish the existence

6

of a physical or mental impairment or disability." *Id.* To evaluate the limiting effect of a claimant's symptoms, the SSA employs a two-step test. *Id.* At step one, the SSA "determine[s] whether the [claimant] has a medically determinable impairment … that could reasonably be expected to produce the [claimant's] alleged symptoms." *Id.* Indeed, the SSA will not find that a symptom affects a claimant's ability to work unless "medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at *3. At step two, the SSA "evaluate[s] the intensity and persistence of [a claimant's] symptoms such as pain and determine[s] the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." *Id.* at *4. In doing so, the SSA "examine[s] the entire case record, including the objective medical evidence; [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the [claimant's] case record." *Id.*

SSA regulations provide further guidance on how the agency evaluates a claimant's subjective symptoms. *See generally* 20 C.F.R. § 404.1529(c). Of note, the regulations acknowledge that sometimes a claimant's symptoms are more severe "than can be shown by objective medical evidence alone." § 404.1529(c)(3). Because "symptoms, such as pain, are subjective and difficult to quantify," the regulations outline several factors that the SSA may consider in evaluating such symptoms including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of a claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications a claimant takes to alleviate her symptoms; (5) treatments, other than medication, that a claimant receives or has received for relief of her symptoms; (6) any measures the claimant takes to relieve her symptoms; and (7) any other factor that concerns the claimant's functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3)(i)-

(vii).

## IV. THE ALJ'S FINDINGS AND DECISION

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2017, her alleged onset date. AR at 12. At step two, the ALJ found that Plaintiff was severely impaired by "residuals from a fractured left ankle status post open reduction internal fixation,"[6] mild osteoarthritis of the hips, mild degenerative changes of the lumbar spine, fibromyalgia, and morbid obesity. *Id.* at 13–14. The ALJ observed that while Plaintiff had medically determinable impairments of MRSA, secondary syphilis,[7] carpal tunnel syndrome, and diabetes mellitus, there was insufficient evidence that those impairments imposed work-related limitations. *Id.* at 14. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a "listed" impairment. *Id.*[8]

### B. Step Four[9]

Upon "careful consideration of the entire record," the ALJ found that Plaintiff had the

---

[6] "Open reduction and internal fixation (ORIF) is a type of surgery used to stabilize and heal a broken bone…If you fracture your ankle, you might need ORIF to bring your bones back into place and help them heal. During an open reduction, orthopedic surgeons reposition your bone pieces during surgery, so they are back in their proper alignment." Ankle Fracture Open Reduction and Internal Fixation, John Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/ankle-fracture-open-reduction-and-internal-fixation (last visited May 17, 2022).

[7] "Secondary syphilis" refers to the secondary stage of syphilis in which an individual can experience skins rashes and mouth sores. Syphilis – CDC Fact Sheet, Centers for Disease Control and Prevention (Feb. 10, 2022), https://www.cdc.gov/std/syphilis/stdfact-syphilis.htm

[8] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id.*

[9] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

residual functional capacity ("RFC") to perform the full range of "light work." AR at 14.[10] In making this finding, the ALJ considered Plaintiff's symptoms, the medical evidence in the record, and the medical opinion evidence. *Id.* at 14–16.

The ALJ began her analysis by reviewing Plaintiff's symptoms. Plaintiff complained of back, hand, hip, and leg pain, all of which she said impaired her ability to lift and carry. *Id.* at 15. Plaintiff represented that her pain lasts for about 10 minutes. *Id.* Plaintiff also reported that the residual pain from her ankle injury prevented her from standing or walking for more than 20 minutes. *Id.* Additionally, Plaintiff claimed that her pain prevented her from sitting for more than an hour. *Id.* In an average day, Plaintiff washes dishes, cooks, and goes grocery shopping. *Id.* Plaintiff estimated that she had 15 to 20 "bad days" a month in which she had difficulty doing anything other than watching television. *Id.*

The ALJ, however, concluded that although Plaintiff's medically determinable impairments "could reasonably be expected" to cause her alleged symptoms, her reports on the limiting effect of her symptoms were not consistent with the record. *Id.* The ALJ acknowledged that the medical evidence established that Plaintiff was obese and had a medical history of carpal tunnel syndrome, rheumatoid arthritis, type II diabetes mellitus, syphilis, and a fractured ankle. *Id.* (citing *id.* at 381, 393, 396). Nonetheless, the ALJ observed that the record indicated that Plaintiff's symptoms "resolved with inpatient medical care." *Id.* The ALJ also emphasized that Plaintiff sustained her ankle injury after jumping a six-foot fence, which is an activity inconsistent with debilitating physical impairments. *Id.* (citing *id.* at 516).

---

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

The ALJ also evaluated the opinions of Athanasios Manole, M.D., Sam Baker, M.D., and Karl Boatman, M.D. Dr. Manole performed a consultative physical examination in July 2019. *Id.* at 15–16; *see generally id.* at 1310–16. He reported that Plaintiff claimed disability due to a broken left fibula, carpal tunnel syndrome, rheumatoid arthritis, and hypothyroidism. *Id.* at 1310–1311. His evaluation revealed that Plaintiff experienced "no work-related limitations in function." *Id.* at 15. Additionally, Dr. Manole did not believe that there was sufficient evidence supporting that Plaintiff suffered from carpal tunnel syndrome. *Id.* He also observed that Plaintiff could squat, rise from a sitting position, walk on her heels and toes, and tandem walk. *Id.*

The ALJ found Dr. Manole's opinion "somewhat persuasive," *id.* at 15, but appears to have disagreed that Plaintiff did not have any work-related limitations. The ALJ determined instead that there was evidentiary support for symptoms that would preclude Plaintiff from working jobs requiring anything more than "light" exertion. *Id.* For example, Plaintiff had a "longstanding history of joint pain" associated with fibromyalgia. *Id.* at 16 (citing *id.* 1323–31, 1378–96). And, in the ALJ's estimation, Plaintiff may experience exacerbated joint pain while engaging in sustained work activity, especially considering her obesity. *Id.* at 16. Additionally, the ALJ noted that there was evidence in the record suggesting that Plaintiff may not be able to lift objects heavier than ten to fifteen pounds. *Id.* (citing 263–273, 325–332).

Drs. Baker and Boatman opined on behalf of the state agency (at the initial and reconsideration levels, respectively) that Plaintiff had no work-related limitations. *See id.* at 63–72, 84–96. The ALJ found these opinions unpersuasive because (1) they were based on Dr. Manole's assessment, which likewise found no work-related limitations, and (2) the ALJ believed that the record established that Plaintiff had at least *some* degree of work-related limitations. *Id.* at 16.

Based on Plaintiff's RFC of "light work," the ALJ found that Plaintiff would be unable to

10

return to her past relevant work as a caregiver because it required "medium"[11] exertion. *Id.* Accordingly, the ALJ proceeded to step five.

### C. Step Five

In light of her finding that Plaintiff had the RFC to perform a full range of light work, the ALJ determined that the grids directed a finding of "not disabled." *Id.* at 16; *see generally* 20 C.F.R. pt. 404, Subpt. P, App. 2 §§ 202.14, 202.21. "[C]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity," the ALJ found that Plaintiff was not disabled as defined by the Social Security Act, from August 1, 2017, through October 22, 2020, the date of her decision. *Id.* at 16–17.

## V. ANALYSIS

Plaintiff argues that the ALJ erred at step five because (1) her exertional limitations did not precisely match a grid rule and (2) she alleged nonexertional limitations, the existence of which she says should have precluded the ALJ from conclusively relying on the grids. The Court addresses these arguments in turn and, for the reasons below, rejects them.

### A. Exertional Limitations

Plaintiff asserts that the ALJ made a finding that she was unable to lift/carry objectives heavier than 10 to 15 pounds. ECF 19 at 11. Because light work requires lifting objects as heavy as 20 pounds, *see* 20 C.F.R. § 404.1567(b), Plaintiff argues she was not capable of performing the *full* range of light work. *See* ECF 19 at 10–11. Plaintiff reasons that because her exertional capacity fell somewhere between light and sedentary work, the ALJ should have applied the grid rules applicable to an individual limited to sedentary work, which would have resulted in a disability

---

[11] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

finding. *Id.* at 10–11. For her part, the Commissioner acknowledges that the full range of light work requires an individual to be able to lift at least 20 pounds. ECF 22 at 17. The Commissioner, however, disputes the "core premise" of Plaintiff's argument that the ALJ actually found that Plaintiff was limited to lifting no more than 10 to 15 pounds. *Id.* at 18. The Court agrees with the Commissioner—the ALJ did not find that Plaintiff could lift no more than 10 to 15 pounds.

The grids may not be conclusively applied, as they were here, unless Plaintiff's characteristics "precisely match[ed]" a particular grid rule. *Thompson*, 987 F.2d at 1488 (quoting *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). Accordingly, the ALJ must determine "whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis" and the ALJ must determine "whether the claimant can perform most of the jobs at his or her RFC level." *Id.* (citing *Frey* 816 F.2d at 512–13). These determinations must, of course, be supported by substantial evidence. *See id.*

In this case, the ALJ found that Plaintiff had the RFC to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b). This determination was supported by substantial evidence. For instance, the ALJ found that there was no evidence that Plaintiff's left ankle injury resulted in residual symptoms. *Id.* (citing AR at 500–04). And the ALJ noted that Plaintiff's rheumatoid arthritis was considered "stable"—even without medication—as of March 2019. *Id.* (citing AR at 585). Moreover, the ALJ found somewhat persuasive Dr. Manole's opinion that Plaintiff had *no* work-related limitations. *Id.*

Further, in addition to ignoring the context provided by the rest of the ALJ's decision, Plaintiff misreads the ALJ's reference to evidence suggesting that Plaintiff could lift/carry objects no heavier than 10 to 15 pounds. The ALJ cited this only to temper Dr. Manole's opinion that Plaintiff had *no* limitations. *See* AR at 16 (ALJ explaining that she found Dr. Manole's opinion

only somewhat persuasive because she was convinced that "the combined effect of [Plaintiff's] impairments would preclude her from performing *more than* light work" based in part on her finding that "[Plaintiff's] medical history support[ed] some of the limitations in daily activity alleged, most notably an inability to lift/carry heavier objects or more than 10 to 15 pounds" (emphasis added) (citing AR 263–73, 325–32)); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ is entitled to resolve any conflicts in the record."); *c.f. Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[W]e hold … that, if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

Because the ALJ determined that Plaintiff could perform the full range of light work, she did not err in applying the grid rules applicable to light work. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids.").

### B. Nonexertional Limitations

Typically, an ALJ may not conclusively rely on the grids if a claimant alleges that she also has nonexertional impairments. *Thompson*, 987 F.2d at 1488. The mere fact that a nonexertional limitation was alleged, however, does not preclude the use of the grids; instead, the subject nonexertional impairment must interfere with the claimant's ability to work. *Id.* "In fact, the grids may be used for claimants with nonexertional impairments 'whenever the claimant can perform a substantial majority of the work in the designated [RFC] category.'" *Martinez v. Astrue*, Civ 12-0011 KBM, 2013 WL 12333487, *3 (D.N.M. Jan. 3, 2013) (quoting *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)). In this case, Plaintiff argues that the ALJ could not conclusively rely on the

grids because she alleged that she was limited by two nonexertional limitations: pain as well as concentration and memory problems. ECF 19 at 11–12.

### 1. Pain

Plaintiff contends that the ALJ did not sufficiently address whether her pain (particularly that attributable to fibromyalgia) was disabling. *Id.* at 9–10. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2P, 2012 WL 3104869, at *2. "[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests," the Tenth Circuit "has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (unpublished) (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003); *Boardman v. Prudential Ins. Co. of Am.,* 337 F.3d 9, 17 n.5 (1st Cir. 2003)). The SSA employs a two-step test for evaluating an individual's symptoms: (1) the SSA determines whether an individual has a medically determinable impairment that could reasonably be expected to produce her alleged symptoms and (2) the SSA considers "the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3–4.

Although the ALJ did not expressly *state* that she found that Plaintiff's pain (caused by fibromyalgia or otherwise) did not significantly limit her work-related capabilities, "it is plain that [she] considered Plaintiff's pain at Step 4 and, for various reasons, found that it did not limit [Plaintiff] from performing a full range of light work." *Martinez*, 2013 WL 12333487, at *3; *see also Gallegos v. Apfel*, F. App'x 748, 749–50 (10th Cir. 2001) (unpublished) ("Although the ALJ did not use the exact words the claimant desired, the ALJ did find that claimant's need to change

positions because of pain '[did] not significantly erode the number of jobs' she could perform … this was simply another way of stating that Mrs. Gallegos's nonexertional impairment was not significant enough to preclude reliance on the grids."). Following SSR 16-3p, the ALJ found that Plaintiff had medically determinable impairments that could cause her pain but determined that her statements regarding the limiting effect of those impairments were not consistent with the record. AR at 15. And the ALJ evaluated whether Plaintiff's pain limited her ability to perform work-related activities. Specifically, ALJ found somewhat persuasive Dr. Manole's examination findings that Plaintiff had a full range of motion and did not have difficulty standing, walking, or lifting. *Id.*; *c.f. Tarpley*, 601 F. App'x at 643 (affirming ALJ's assessment of plaintiff's fibromyalgia pain where the plaintiff "enjoy[ed] a full range of motion in her joints, possess[ed] normal strength, and walk[ed] and mov[ed] without much difficulty."). Because the ALJ found that Plaintiff's pain producing impairments did not have a significant effect on her work-related abilities, Plaintiff's alleged pain did not preclude the ALJ's reliance on the grids.

2. Memory and Concentration

Plaintiff's final argument is that the ALJ could not conclusively rely on the grids because Plaintiff asserted nonexertional limitations in memory and concentration, which the ALJ did not address. ECF 19 at 7–11. The Court, however, holds that the ALJ was not required to discuss Plaintiff's alleged concentration and memory problems because Plaintiff made only passing references to these limitations.

"Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Indeed, it is a claimant's responsibility to prove that she is disabled. 20 C.F.R. § 404.1512(a)(1). Accordingly, the SSA will only consider impairments that a claimant

15

says she has or about which the SSA receives evidence. *Id.* To be sure, in response to check-the-box questionnaires on two function reports, Plaintiff identified problems with concentration and memory. AR at 269 (function report dated February 14, 2019), 330 (function report dated October 25, 2019). There is, however, a dearth of evidence supporting the existence of these limitations. Tellingly, Plaintiff points to a *single* treatment record, from when she was hospitalized for MRSA, in which the treating physician noted that Plaintiff had decreased concentration. ECF 19 at 8 (citing AR at 780). But there is nothing to suggest that whatever symptoms Plaintiff experienced in the midst of her MRSA treatment would extend well *after* she was treated. *See* AR at 780. Moreover, at no point throughout her entire hearing testimony did Plaintiff complain of *any* mental limitations (let alone memory or concentration problems). *See id.* at 37–60. Because Plaintiff made only passing references to difficulties with concentration and memory, the Court holds that the ALJ was not required to make findings on these limitations before conclusively relying on the grids.

## VI.  CONCLUSION

The ALJ applied the correct legal standards and her findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.