IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARLA GARCIA,

    Plaintiff,

vs.                                                                                               No. CV 21-372 KG/GJF

KILOLO KIJAKAZI, *Acting Commissioner of*
*the Social Security Administration*,

    Defendant.

ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on United States Magistrate Judge Gregory J. Fouratt's Proposed Findings and Recommended Disposition ("PFRD") (Doc. 30), Plaintiff's Objections (Doc. 31), and Defendant's response to those objections (Doc. 32). Having conducted a *de novo* review of the relevant portions of the record, the Court overrules Plaintiff's Objections and adopts the PFRD.

I.     *Background*

Plaintiff is 53 years old and lives with her daughter in Santa Fe, New Mexico. Administrative Record ("AR") at 41–42. Before applying for social security disability benefits, Plaintiff earned an associate's degree and previously held licenses to work as a dental assistant and an emergency medical technician. *Id.* at 41. Plaintiff last worked in 2017 as an in-home caregiver. *Id.* at 58. Plaintiff filed applications for supplemental security income and for disability insurance benefits in January 2019. *Id.* at 11. Plaintiff claims that, as of August 1, 2017, she has been disabled within the meaning of the Social Security Act due to a left broken fibula, a history with methicillin-resistant staphylococcus aureas (commonly known as "MRSA"), rheumatoid arthritis, and carpal tunnel syndrome. *Id.* at 63–64.

The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. *Id.* at 71, 81. At Plaintiff's request, Administrative Law Judge ("ALJ") Michelle Lindsay held a hearing in September 2020, *id.* at 71, 133–35, after which she issued a written decision finding Plaintiff "not disabled" at step five because she could engage in "work that exists in significant numbers in the national economy." *Id.* at 17. Plaintiff appealed to the Appeals Council, which denied review. *Id.* at 1. Plaintiff then filed the instant action, seeking reversal of the ALJ's decision. (Doc. 1). In May 2022, pursuant to the Court's order of reference (Doc. 28), Judge Fouratt issued a PFRD recommending that the Commissioner's final decision be affirmed and that this case be dismissed with prejudice. (Doc. 30).

In the PFRD, Judge Fouratt considered Plaintiff's arguments challenging the ALJ's reliance on the grids. (Doc. 30) at 2; *see generally* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Plaintiff insisted that the ALJ erred by conclusively relying on the grids because the ALJ found that Plaintiff could not perform the full range of light work and because Plaintiff had nonexertional limitations. (Doc. 30) at 2 (citing (Doc. 19) at 7–11).

Addressing Plaintiff's first asserted point of error, Judge Fouratt determined that the ALJ's finding that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work was supported by substantial evidence. *Id.* at 11. Judge Fouratt further reasoned that the ALJ did *not* find that Plaintiff was limited to lifting/carrying objects no heavier than 10 to 15 pounds. *Id.* at 12–13. In the context of finding Dr. Manole's opinion unpersuasive, the ALJ noted that "[i]n reaching this conclusion, the undersigned finds the claimant's medical history supports some of the limitations in daily activity alleged, most notably an inability to lift/carry heavier objects or more than 10 to 15 pounds." AR at 16. Judge Fouratt, however, emphasized that the

2

ALJ made this statement merely as part of her explanation as to why she was not crediting Dr. Manole's opinion that Plaintiff had *no limitations*. (Doc. 30) at 13. Judge Fouratt went on to conclude that substantial evidence supported the ALJ's finding that Plaintiff could perform the full range of light work and further found that the ALJ did not err in utilizing and relying on the grid rules applicable to light work. *Id.*

Next, Judge Fouratt considered whether Plaintiff had any nonexertional impairments that would have precluded the ALJ from conclusively relying on the grids. Plaintiff argued that she had two such impairments: (1) pain and (2) memory and concentration problems. *Id.* at 2–3. Addressing Plaintiff's alleged pain, Judge Fouratt determined that the ALJ had properly evaluated Plaintiff's pain pursuant to SSR 16-3p. *Id.* at 14–15. And in considering Plaintiff's alleged concentration and memory problems, Judge Fouratt reasoned that because Plaintiff had made only passing references to these limitations, the ALJ was not required to make findings on Plaintiff's alleged concentration and memory problems and that these alleged limitations did not therefore preclude the ALJ's reliance on the grids. *Id.* at 15–16.

Plaintiff now objects to the PFRD.

II. *Standard of Review*

To preserve an issue for review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In reviewing such objections, the district court must "make a de novo determination of those portions of the [report and recommendation] . . . to which objection is made." 28 U.S.C. § 636(C); *see also* Fed. R. Civ. P. 72(b)(3). The district court is not, however, required to "make any specific findings; the district court must merely conduct a

*de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000) (holding that a district court's "terse" order, containing only one sentence for each claim, was still "insufficient to demonstrate that the court failed to review the magistrate's recommendation *de novo*"). Consequently, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) (noting that "in the exercise of [its] sound judicial discretion," the district court may place "whatever reliance" it chooses to place on a magistrate judge's recommendation).

III. *Analysis*

Plaintiff argues that the ALJ erred by relying on the grids "conclusively" and brings two specific objections to the PFRD. (Doc. 31) at 3. First, Plaintiff contends that the ALJ did find that Plaintiff was limited to lifting/carrying 10 to 15 pounds, contrary to the PFRD. *Id.* at 4. Plaintiff insists that the context of the ALJ's statement supports such a reading. *Id.* Specifically, Plaintiff emphasizes that in rejecting Dr. Manole's opinion, the ALJ found that certain evidence in the record supported some degree of limitation, including an inability to lift/carry more than 10 to 15 pounds. *Id.* Plaintiff contends that a plain reading of the ALJ's decision shows that the ALJ:

> 1. found that Dr. Manole's opinion was inconsistent with the record; 2. Found that the facts which were inconsistent with Dr. Manole's opinion as well as facts concerning Ms. Garcia's ankle pain precluded more than light work; 3. Found that the record supported some of Ms. Garcia's alleged limitations in performing daily activities; and 4. Found that one such supported alleged limitation was 'an inability to lift/carry heavier objects or more than 10 to 15 pounds.'

*Id.* at 5.

Second, Plaintiff asserts that the ALJ failed to properly apply the correct legal standards for evaluating Plaintiff's fibromyalgia produced pain. *Id.* at 6. Particularly, Plaintiff contends that the

4

ALJ failed to perform the analysis set forth in the Tenth Circuit in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Plaintiff insists that the ALJ's failure to evaluate Plaintiff's pain under the three-part test articulated in *Luna* requires remand. ECF 31 at 6–10.[1]

For the reasons explained below, the Court overrules each of Plaintiff's specific objections and adopts the PFRD.

The "grids" are a set of rules used to "identify whether a claimant is disabled by comparing [her] personal characteristics to the criteria of specific rules—without consulting a vocational expert." *Aslan v. Colvin*, 637 Fed. Appx. 509, 510 (10th Cir. 2016) (unpublished). In other words, the grids act as a shortcut for step five analysis, obviating the need for vocational expert testimony. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) (citing *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988)). Before the grids may be applied conclusively, however, the claimant's RFC must precisely match the criteria of a particular rule. *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984). And because the grids only consider *exertional* limitations, they may not be conclusively applied where nonexertional impairments are present. *Id.* Thus, the grids may only be applied conclusively if (1) the claimant's characteristics "precisely match" the criteria of a rule and (2) the claimant does not claim any nonexertional impairments. *Trimiar*, 966 F.2d at 1332–36. If the grids cannot be conclusively applied, "the ALJ must resort to testimony from a vocational expert." *Id.* at 1333.

---

[1] In *Luna*, the Tenth Circuit held that when evaluating a claimant's subjective complaints of pain, an ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged; and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 166–67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64).

However, "the mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990)). Instead, the nonexertional impairment must interfere with the claimant's ability to work. *Id.* (citing *Ray*, 865 F.2d at 225; *Gossett v. Bowen*, 862 F.3d 802, 807 (10th Cir. 1988)). Put another way, the "presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant." *Ray*, 865 F.2d at 226 (citing *Gossett*, 862 F.32d at 807–08.

In this case, the Court evaluates whether Plaintiff's exertional limitations "precisely matched" a grid rule and whether Plaintiff had nonexertional limitations that interfered with her ability to perform light work. If Plaintiff's exertional limitations did not precisely match a grid rule or if Plaintiff had nonexertional limitations that interfered with her ability to work, the ALJ could not have conclusively relied on the grids and remand would be required. The Court concludes that Plaintiff's exertional limitations precisely matched a grid rule and that she did not have nonexertional limitations that would have precluded her from performing light work. Consequently, the Court concludes that the ALJ did not err by conclusively relying on the grids to determine whether Plaintiff was disabled.

A. *ALJ Found that Plaintiff Could Perform Full Range of Light Work*

Before the grids may be applied conclusively, the claimant's RFC must precisely match the criteria of a particular rule. *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984). The issue here is whether the ALJ found that Plaintiff could perform less than the full range of light work

(*i.e.*, that she only could lift/carry no more than 10 to 15 pounds). The relevant passage of the ALJ's decision reads:

> While Dr. Manole's examination revealed no evidence of rheumatoid arthritis (Exhibit 12F, p. 6), progress notes confirm a longstanding history of joint pain, and show in recent months this symptomatology has been associated with fibromyalgia (Exhibit 15F & Exhibit 19F, pp. 1-19). These facts, and the fact that sustained work could be expected to aggravate residual ankle pain, especially given the claimant's BMI, convince the undersigned that the combined effect of the claimant's impairments would preclude her from performing more than light work. In reaching this conclusion, the undersigned finds the claimant's medical history supports some of the limitations in daily activity alleged, most notably an inability to lift/carry heavier objects or more than 10 to 15 pounds (Exhibits 3E & 13E). Consequently, the undersigned finds the opinion of the Disability Determination Service (DDS) physician, who adopted Dr. Manole's findings, unpersuasive, as the evidence establishes impairments that could be expected to impose work-related limitations in function (Exhibits 3A & 7A).

AR at 16 (highlighting added). While this paragraph, standing on its own, could be ambiguous as to the ALJ's finding, the ALJ clarified the matter on the next page, stating:

> If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). The claimant has the residual functional capacity to perform the full range of light work. Therefore a finding of "not disabled" is directed by Medical-Vocational Rules 202.21 and Rule 202.14.

AR at 17 (highlighting added).

Based on a *de novo* review, and reading the ALJ's decision as a cohesive whole, the Court agrees with Judge Fouratt—the ALJ did *not* find that Plaintiff had this lifting/carrying limitation and instead merely cited this limitation as evidence that Dr. Manole's opinion was only somewhat persuasive.

In any event, the fact that this limitation was not included in the ALJ's RFC finding is dispositive. The ALJ's *entire* RFC finding read as follows: "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)." AR

at 14. An ALJ's RFC finding reflects her assessment of the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, an ALJ considers the limiting effects of *all* of a claimant's impairments—even those that are not severe. 20 C.F.R. § 404.1545(e). Because the RFC represents the entirety of an ALJ's findings on a claimant's limitations and because the ALJ made no specific RFC finding regarding Plaintiff's ability to lift/carry, the Court concludes that the ALJ did not find that Plaintiff was limited to lifting/carrying no more than 10 to 15 pounds.

B. *The ALJ Was Not Required to Make a Specific Finding Under* Luna

In *Luna*, the Tenth Circuit recognized that "subjective" evidence of pain must be properly evaluated by an ALJ. 834 F.2d at 165–66. Since *Luna*, the Tenth Circuit has articulated a three-part test an ALJ must use to evaluate a claim of disabling pain:

> An ALJ… is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged …; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64). The Tenth Circuit has further clarified that "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (same). Indeed, the Tenth Circuit has held that "common sense, not technical perfection, is [its] guide." *Id.*

In over thirty years since *Luna*, the SSA has clarified how it considers "[t]he intensity, persistence, and functionally limiting effects of symptoms." SSR 16-3p, 2017 WL 5180304, at

*1.[2] The SSA applies a two-step test: (1) it determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms, and (2) it evaluates the intensity and persistence of the claimant's symptoms and determines the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *1–5. At step two, the SSA considers the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her symptoms (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7–8.

The Tenth Circuit has observed that these factors are largely similar to those identified by *Luna*. *See Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545 (10th Cir. 2017); *see also Olson v. Commissioner, SSA*, 843 Fed. Appx. 93, 97 n.3 (10th Cir. 2021) (stating that analysis under SSR 16-3p is "substantially the same" as Tenth Circuit precedent).

Mindful of the Tenth Circuit's exhortation that common sense be the Court's guide in evaluating an ALJ's subjective symptom analysis, the Court holds that the ALJ was not required

---

[2] In the SSA's parlance, "symptoms" refer to a claimant's own description of her physical or mental impairment(s). 20 C.F.R. 404.1502(i).

to specifically invoke *Luna* and engage in a "formalistic factor-by-factor recitation." *Keyes-Zachary*, 695 F.3d at 1167 (quotation omitted).

The ALJ adequately followed the analysis described in SSR 16-3p. Applying step one, the ALJ determined that Plaintiff's pain could reasonably be expected to produce her alleged symptoms. AR at 15. Moving to step two, the ALJ determined that Plaintiff's statements regarding the limiting effects of those symptoms were not consistent with the evidence in the record. *Id.* The ALJ observed that Plaintiff's arthritis was stable without medication. *Id.* Plaintiff also displayed physical abilities greater than her claimed limitations. For example, Plaintiff injured an ankle after attempting to jump a six-foot fence. *Id.* And Plaintiff's physical therapy records showed that she was fully ambulatory and independent in her activities of daily living. *Id.* Moreover, Dr. Manole, whom the ALJ found somewhat persuasive, opined that Plaintiff had no work-related limitations in function. *Id.* Accordingly, the Court finds that the ALJ's analysis of Plaintiff's pain was supported by substantial evidence. The Court will not disturb the ALJ's decision by reweighing the evidence. *See Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

IV. *Conclusion*

Following its *de novo* review of the record, the Court agrees with the analysis and conclusions set forth in the PFRD.

IT IS, THEREFORE, ORDERED that Plaintiff's Objections (Doc. 31) are overruled and that the PFRD (Doc. 30) is adopted. Plaintiff's Motion to Remand (Doc. 19) is denied and this case is dismissed with prejudice. The Court will separately enter final judgment pursuant to Federal Rule of Civil Procedure 58.

_____
UNITED STATES DISTRICT JUDGE